[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 25, 2006
THOMAS K. KAHN
CLERK

No. 06-10246
Non-Argument Calendar
_____

BIA No. A79-074-720

MARIA PARRA,

                                                      Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                      Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(July 25, 2006)**

Before DUBINA, HULL and FAY, Circuit Judges.

PER CURIAM:

Colombian citizen and national Maria Parra petitions for review of the Board of Immigration Appeals's ("BIA") affirmation of the Immigration Judge's ("IJ") order denying her claim for asylum, 8 U.S.C. § 1158, withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), and her claim for protection under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c). On appeal, Parra argues that the IJ erred in finding her not credible and denying asylum and relief under the CAT.[1] For the reasons set forth more fully below, we deny the petition.

## I. BACKGROUND

On February 25, 2002, Parra was issued a notice to appear, charging her with removability for falsely representing herself to be a U.S. citizen and for not possessing a valid entry document at the time she applied for admission. Parra admitted the allegations in the notice to appear and conceded the charges of inadmissibility. She sought asylum, withholding of removal, and CAT relief, alleging persecution on account of her political opinion.

---

[1] On appeal, Parra mentions the denial of withholding of removal under the INA in her statement of the issues, but has abandoned the issue by making no argument as to the claim in her brief. Huang v. U.S. Att'y Gen., 429 F.3d 1002, 1007 n.2 (11th Cir. 2005). Accordingly, this issue is not discussed further.

2

In support of her application, Parra testified that she worked as a beautician and owned her own business. One of her clients asked Parra to provide beautician services for the client's husband, who was in prison. Parra subsequently learned that he was in jail because he was a paramilitary. Between November 1, 1999, and the end of August 2000, Parra went to the prison and provided him with hair cuts, fingernail services, and facials.

At the end of June or July 2000, Parra was threatened by four people who arrived at her salon seeking information about this imprisoned client and his family. Parra did not give them any information. They stayed for about half an hour and, when they left, asked her to cooperate with them in a "good way," otherwise they would get her to cooperate in a "bad way." The men never identified themselves or told Parra why they wanted the information. After this incident, Parra continued providing her services at the jail. She explained that she did not think about stopping this work because the prisoner was not her only client and, at that time, she was making her business grow and he paid her very well. In August 2000, the lock on her beauty salon was blown open. Nothing was stolen, but she received a message that she cooperate or die. After this, she stopped going to the prison.

Parra testified that the people who were after her were guerillas. Parra explained that, in May 2000, two men, who also were approached for information

3

about this client, did not provide that information and were killed. The client's wife told Parra that she believed those men were killed by the guerillas and that Parra had been threatened by those same guerillas.

Parra left Colombia in December 2000 and went to Spain, leaving her daughter in Colombia. Parra stayed in Spain for one year and applied for residency. She left without completing the process for residency because she saw two of the persons that had threatened her in Colombia, and they tried to follow her. She did not file a police report with the Spanish authorities, and felt that there was not much justice in Spain. She next went to Canada and took a bus into the United States, using a false U.S. passport. Parra did not know that she could request asylum in Canada, and believed that, when she was in Canada, she already was in the United States.

The IJ denied asylum, withholding of removal, and CAT relief. The IJ found that Parra's testimony was not "totally logical," citing her claims that, inter alia, the government would allow Parra to perform her services for a jailed paramilitary member, Parra would do so just to build her client base, Parra did not go to the authorities in Spain because there was no "justice" but sought permanent residency there, and Parra believed she was in the United States when she went to Canada. As a result, the IJ found that her credibility was "significantly diminished." The IJ further found that, even if he assumed that Parra was totally

4

credible, she did not demonstrate past persecution or a well-founded fear of future persecution on a protected ground, and, thus, did not establish asylum eligibility. The IJ found that she was not harmed in either Colombia or Spain, nor that her fear of returning based on her refusal to collaborate was based on a protected ground. The IJ also denied asylum in the exercise of discretion because Parra used a false passport to enter the United States, used a "secutive" route to travel to the United States, and may have been firmly resettled or close to firmly resettled in Spain. The IJ found that Parra's CAT claim also failed because she had not been tortured and there was no reason to believe that she would be tortured by or with the acquiescence of a Colombian government official. The BIA affirmed the IJ's decision without opinion.

## II. DISCUSSION

On appeal, Parra contends that the IJ's rejection of her testimony as illogical was erroneous, arguing that her work at the prison was plausible, her testimony was detailed, believable, and consistent, and the IJ applied a presumption that her testimony was not credible and failed to properly evaluate her credibility. On the merits, Parra appears to argue that, even though she could not conclusively show the motivation for the persecution, she feared persecution by non-governmental entities from whom the government could not provide protection. As a result, Parra also argues that the IJ erred in denying CAT relief.

5

Because the BIA summarily affirmed the IJ without opinion, we review the IJ's opinion. See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1284 n.1 (11th Cir. 2003). We review factual determinations, including credibility determinations, using the substantial evidence test. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). We will affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (citation and quotation marks omitted). We review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision. Id. To conclude that the IJ should be reversed, we "must find that the record not only supports that conclusion, but compels it." Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002) (citation and quotation marks omitted). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005). To the extent the IJ's decision was based on a legal determination, review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001).

The IJ must make an explicit credibility determination. Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). In Yang, we held that an IJ did not make an explicit credibility finding where the IJ described the petitioner's claims

6

as a "ridiculous fabrication" and her testimony as "extremely inconsistent" and making no sense whatsoever. Id. In this case, the IJ found that Parra's testimony was not "totally logical," and concluded that her credibility was "significantly diminished." Here, the IJ failed to make a clean determination of credibility. Therefore, as in Yang, we assume that any credibility determinations were not dispositive. Id.

The Attorney General or the Secretary of Homeland Security has discretion to grant asylum if an alien meets the INA's definition of a "refugee." See INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A). A "refugee" is:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). In order to carry this burden, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230-31 (11th Cir. 2005). In the absence of past persecution,

7

"the petitioner must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006). "The subjective component can be proved 'by the applicant's credible testimony that he or she genuinely fears persecution,' while the objective component 'can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution.'" Id. (citation omitted). We require the applicant to present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of" a protected ground. Al Najjar, 257 F.3d at 1287 (quotation marks and citation omitted) (emphasis in original).

We have noted that persecution is "an 'extreme concept,' requiring 'more than a few isolated incidents of verbal harassment or intimidation,' and that '[m]ere harassment does not amount to persecution.'" Sepulveda, 401 F.3d at 1231 (quoting Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000)) (alteration in original). Furthermore, "[n]ot all exceptional treatment is persecution." Gonzalez, 212 F.3d at 1355; see also Zheng v. U.S. Att'y Gen., No. 05-12818, manuscript op. at 7-9 (11th Cir. June 14, 2006) (holding that five-day detention during which petitioner was not harmed, petitioner's termination from his job and inability to find another in that city, and occasional search of his parents' home by the police constituted harassment but did not

8

compel a finding of past persecution). The persecution must be on account of Parra's political opinion, whether actual or imputed, and not the beliefs or opinions of her persecutors. See I.N.S. v. Elias-Zacarias, 502 U.S. 478, 482, 112 S.Ct. 812, 816, 117 L.Ed.2d 38 (1992) (holding that persecution on account of political opinion is "persecution on account of the victim's political opinion, not the persecutor's") (emphasis in original); Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 437-38 (11th Cir. 2004) (holding that the petitioner must establish past or future persecution because of her actual or imputed political opinion). "It is not enough to show that she was or will be persecuted or tortured due to her refusal to cooperate . . . ." Sanchez, 392 F.3d at 438.

In order to obtain relief under the CAT, a petitioner must show that "it is more likely than not that she will be tortured in her home country at the hands of her government or that her government will acquiesce in the torture." Id. Torture is defined as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1).

9

In this case, the IJ found that, even if totally credible, Parra failed to meet her burden to establish asylum eligibility. This finding is supported by substantial evidence. The arrival of four people at Parra's beauty salon requesting information, the breaking of the locks on her salon, and the threatening note, and two of the men following her in Spain without incident "do not rise to the level of past persecution that would compel reversal of the IJ's decision." Sepulveda, 401 F.3d at 1231; Zheng, No. 05-12818, manuscript op. at 7-9.

Furthermore, substantial evidence supports the finding that Parra was not threatened based on her actual or imputed political opinion, but was threatened due to her refusal to cooperate, which is not persecution on a protected ground. Elias-Zacarias, 502 U.S. at 482, 112 S.Ct. at 816. Parra did not provide a political motive for having a jailed paramilitary as a client, and, because the men sought her cooperation to obtain information about her client, the record does not compel a finding that she was threatened on account of an imputed political opinion. As a result, the record does not compel the conclusion that Parra established that she suffered either past persecution or a well-founded fear of future persecution based on a protected ground.

Because Parra offered no evidence that she ever was "tortured" within the meaning of 8 C.F.R. § 208.18(a)(1), the record does not compel the conclusion that she was eligible for relief under the CAT.

In light of the foregoing, we deny the petition.

**PETITION DENIED.**